All right, our last case is number 19-14065, Martin Cowen et al. v. Georgia Secretary of State. Mr. Sells. Thank you, Judge Jordan, and may it please the court, good morning. My name is Brian Sells, and I represent Appellants Martin Cowen and others. This court should vacate the judgment of the district court for two main reasons. First is the principle that lower courts are bound by the Supreme Court's choice of a legal standard, and it is beyond dispute that ballot access claims under the First and Fourteenth Amendments must be decided using the legal standards set out in Anderson v. Celebrezzi. This court reiterated that principle just six years ago in the Green Party case. The second reason to vacate the judgment is that, with respect to the plaintiff's equal protection claim, even the Secretary of State describes it as novel and distinct from Jenis v. Schwartzen, and it therefore could not have been foreclosed by Jenis as the district court held here without so much as a sentence of analysis. Mr. Sells, this is Judge Jordan. I understand that your equal protection claim is different, and I, for my part, I speak only for myself. I don't think it's barred by Supreme Court precedent and by Jenis, but with regards to your First and Fourteenth Amendment claims, those are the exact same claims that were rejected in Jenis by the Supreme Court, and how in the world are we supposed to decide an issue differently than the Supreme Court squarely did 50 years ago? Well, Your Honor, I don't agree that our claims here are identical to the ones that were presented to the court in Jenis, but it is Hornbook law that lower courts must follow the Supreme Court's articulation of the appropriate legal standard, and there's no dispute here that Anderson is the appropriate legal standard for valid access claims, and the district court expressly declined to apply the Anderson test, and as this court held in Berglund and Green Party, failing to apply the Anderson test was therefore reversible error, and I might add that Berglund involved a candidate for United States representative, just as we have here, so it's really on all fours with this case, and I think this positive of the issue, but there are also... But another principle that's Hornbook constitutional law is that, or federal court's law, is that it is the prerogative of the Supreme Court only to overrule a precedent that is on point, even if that precedent has been eroded or modified or undercut by later decisions, and here we have not only Jenis, but you have the Supreme Court as late as the late 1990s favorably citing Jenis as allowing states to put in a valid. How do you avoid all of that? Well, let me make two points, I think, in response to that. First of all, favorably citing Jenis does not mean that the Anderson test does not apply. There are lots of courts that both cite Jenis and apply the Anderson test, so that's my first point. My second point is that there are significant material differences between this case and the Jenis case, and I can go over some of those if that would be helpful. Sure. Tell me a couple of the main ones. Yeah, let me break it down like this. Of the 11 or so facts upon which the Supreme Court relied in the Jenis case, three are no longer true, and these include the most important fact that the Supreme Court relied on, which is that there had been two recent candidates who satisfied the test. In this case, of course, that's not true. The second fact that is no longer true is that Georgia placed no restrictions on write-in voting. The Supreme Court mentioned that, and that is no longer true. And the third is that Georgia did not require any signatures to be notarized, and now it does. And on top of that, there are at least six additional facts in this case which were not present in Jenis and could have affected the outcome. And the first of those is the most important, that we are challenging the filing fee in addition to the signature requirement. The district court in this case made a pretty shocking mistake when it characterized the Jenis opinion as rejecting a constitutional challenge to the filing fee, when you can see on page 42 of that opinion that the filing fee was not at issue before the court. By the way, let me interrupt you. I agree with you that Jenis deals with the 5% support aspect of the case, not with the fee part of it. Well, right. And we have a fee claim in here. And on top of that, we have new laws in Georgia and in the United States, campaign finance laws and the statewide ballot access laws here in Georgia that are also pertinent to our claims. And it doesn't really I don't think it matters how one characterizes the Anderson test, whether you characterize it as a clarification or an extension or an abrogation. But as this court recognized in Bergland, it is still indisputably the proper standard for First Amendment ballot access claims. And that was in the context of a challenge involving a U.S. representative. I think the way the Hornbook puts it is probably best. And I'll read from that. This is on page 31 of the law of judicial precedent. It says, quote, our results reached under the old standard still binding precedent. The answer is no. Instead, federal courts must apply the new standard and reach the result dictated under that new standard. And that's what we have here, that Anderson applies and not Genes. Now, that does not mean, of course, that the court may not reason from Genes. It would be perfectly appropriate, for example, for the district court or this court to note the fact that in Genes, the court relied on the fact that signers can sign more than one petition. That is something to go into the Anderson calculus, the multi-factor balancing test. But there are other things that go into the Anderson test, and the district court should have looked at those as well. And it didn't. And that was reversible error. Now, unless there are other questions about the Anderson test, I'd like to say a few words about equal protection. Sure. Okay. So the secretary describes the plaintiff's equal protection claim as novel and distinct from Genes. And the secretary is right on that. In Genes, the plaintiffs argue that Georgia could not constitutionally treat political body candidates differently from political party candidates. And here, the plaintiffs claim that Georgia violates the libertarian candidates for U.S. representative different from libertarian candidates for statewide offices. And Genes didn't address this disparity because it didn't exist at the time of the case. And so Genes, therefore, could not control the outcome of the plaintiff's claim. And the district court did not separately address the plaintiff's equal protection claim beyond a very, very brief assertion on page 14 that the equal protection analysis in Genes is still binding. It did not even cite the 1979 Socialist Workers Party case on which the claim is based. And because Genes could not have foreclosed the plaintiff's equal protection claim, this court should vacate its judgment on that issue. Finally, I'd like to turn to the remedy, unless there are other questions on the equal protection claim. So at the very least, this court should vacate and remand the case to the district court because it failed to apply the appropriate legal standard and didn't address the plaintiff's equal protection claim at all. But this court also has authority to decide summary judgment de novo. And there are at least two reasons why the court should consider granting the plaintiff's motion here. The first is that the record is quite robust, as the district court acknowledged, and this court has everything it needs to rule. The second reason for this court to decide the merits of the case is that the Secretary of State chosen his brief not to respond to my client's argument that Georgia's ballot access scheme flunks the Anderson test. For example, the Secretary has no answer to the overwhelming and undisputed evidence in the record that Georgia's ballot access scheme freezes the status quo. There have been more than 20 candidates. Thank you, Ms. Geddes. There have been more than 20 candidates who've tried unsuccessfully just in the last 20 years alone. The Secretary failed to reckon with the fact that no third party candidate for US representative has appeared on the general election ballot since the scheme was first enacted in 1943. The Secretary does not address the fact that Georgia's petition requirement and filing fee are by far the most stringent in the nation. And he doesn't even attempt to argue that Georgia's scheme is remotely necessary for the state to advance its legitimate interests. And that's because there is no constitutional justification for continuing to deny Georgia voters the opportunity to vote for libertarian candidates for Congress. And I'll just say in closing, that it's important to remember that the rights of Georgia's voters to express their political preferences freely are very much at stake here as well. And if there aren't any more questions from the panel, I will yield to my colleague on the other side. Okay, you've saved your time for rebuttal, thank you very much. Thank you. Ms. McGowan. Thank you, Your Honor. May it please the Court, this is Charlene McGowan on behalf of the Appellee, the Georgia Secretary of State, Brad Raffensperger. As the Court correctly noted, this case is controlled by 50 years of precedent upholding the constitutionality of Georgia's petition requirements for political body candidates. These very petition requirements challenged here were first upheld by the Fortson case, which Your Honor is absolutely correct, that case is squarely on point. And since that decision, this Court has upheld Georgia's petition requirements three additional times. The district court directly followed this. Ms. McGowan, can I ask you a question on the equal protection claim? And you don't have to answer it now, but I would like you to try during the course of your argument. The district court did not separately address the equal protection claim. And that seems to me to be a procedural problem. Do you agree or disagree? I believe the district court did address the equal protection claim and found that it was foreclosed by the Genes decision. And I'm happy to address that. How could that be when no such claim was presented in Genes? There was an equal protection claim presented in Genes. Not the one that's presented here. It is slightly different, Your Honor. You're correct that in Genes, the equal protection claim was whether Georgia's petition requirements discriminated between political party candidates as opposed to political body candidates. But the district court still reached the correct result. And this court can find that there is still no equal protection claim as a matter of law. And we characterize their equal protection claim as novel because it alleges a type of discrimination that has never been recognized under the law. And they claim that Georgia's petition requirements discriminate between libertarian candidates for statewide office as opposed to libertarian candidates for the U.S. House of Representatives. And their argument is based upon two false assumptions. One, that that is a claim recognized under equal protection law. But it's also a false factual premise. Now, to win on the merits of their equal protection claim, the Libertarian Party has to show some sort of discrimination against them. And they cannot make that showing. Election laws create many types of classifications, which do not deny equal protection. And as the Supreme Court said in its decision in American Party of Texas versus white, that it's only invidious discrimination, which offends the Constitution. And the Libertarian Party has not fulfilled that showing. Now, what their argument is basically boils down to is that because the Libertarian Party has qualified to run candidates on the statewide ballot and nominate them by convention, and that is under a different Georgia statute that is not at issue here, that therefore the state is required under the Constitution to waive all requirements for them to run their candidates at the local level. But the state has just as much of an interest in making sure that candidates at the local level have that significant modicum of support amongst the voters in order to have the state put them on the ballot. This has been a state interest that has been recognized since Genes. And the state has, that is a legitimate interest both at the merely because a political body candidate, someone from the Libertarian Party may have some support statewide does not necessarily mean that a candidate will have that type of support amongst the voters at the congressional level. Do you, did you interpret the plaintiff complaint as also challenging the filing, the filing fee requirement? We did, your honor. We interpreted their claim as being both the and I can address the filing fee issue. The district court didn't separately address the filing fee, right? I don't know specifically whether or not the district court addressed the filing fee, but it is still, does not raise the level. That was not an issue, that was not The filing fee was presented as an issue in the lower court in the Genes decision. The district court actually enjoined the filing fee requirement at the lower level in the Genes case. And after that injunction was issued, the legislature actually amended the law to make it less restrictive than what it was at the time of Genes. So it wasn't an issue up on appeal, but over time, Georgia's filing fees. So the Supreme court's decision doesn't control on the filing fee issue, right? It does not, your honor, but it also does not rise to a level of a first or 14th amendment violation in this case, even combined with the petition requirement, because Georgia actually allows Pauper's affidavits to be filed in lieu of the filing fee. And so therefore it is, it is not a requirement that candidate counsel, this judge Anderson talking, I'm going to shift you to the really, this is not just first and 14th amendment because Berglund also involved in equal protection claim. And I do not see how you can get around the square holding of Berglund, which is a prior panel opinion prior to Cartwright and Cofield, uh, that holds that, uh, uh, a claim just like this has to be, uh, analyzed on the Anderson and held at page 1554 in the right column that Gen S does not foreclose the party's right to present evidence necessary to undertake the balancing approach outlined in Janice. No, you have to, what you have to do in the district court is conduct the balancing, uh, as indicated in Anderson and Janice does not foreclose that. It seems to me that the flat holding that, um, uh, is binding on us, whatever we might think about it. Furthermore, it does seem to me that several factors have changed since Janice. Uh, one is the 1%, uh, statewide, uh, situation that you're talking about within the equal protection area, but it's, it's a change, uh, in the Georgia law. It clearly seems to me that the facts here, the evidence here is different from, uh, Janice in that, um, there's simply no, uh, body who has ever, uh, satisfied the 5% in a congressional district in Georgia. And, uh, that's quite contrary to the facts in Janice. And, uh, frankly, I think the federal law has changed. I think Anderson constitutes somewhat of a change in the federal law from the time of Janice and Norman, uh, later suggesting, uh, a heightened scrutiny applies to the extent that the, uh, uh, restrictions on ballot access are, are severe such that I think there's a whole lot that has changed in addition to simply the flat holding of Berglund that, uh, the Anderson analysis has to be, uh, uh, employed. How do you respond? How do you get around Berglund? Well, your honor, your question raises several questions and I'd like to address them each in turn. First, I'll start with the Berglund decision. That case is not controlling because it was very clear that it was only distinguishing Janice because that case did not involve, excuse me for interrupting, but it was not clear at all. And at 1553 in note one, the parties there also included, uh, a man named Forrest who was a congressional candidate. He also, his claim also was remanded with the instructions that they had to, uh, the district who had had to employ the Anderson standard. Your honor, if you look at the way the court analyzed the case starting at page 1554, um, it does note that this particular case is not bound by Janice, but then the court very much in its analysis was distinguishing this case because it involved the unique nature of a, of a presidential election, even recognizing that an Anderson that, um, but that has less of an interest in regulating presidential elections and statewide or local elections because the outcome of the former will largely be turbaned by voters beyond the state's boundaries. And so the court was very clearly distinguishing this case from Janice, not saying that Janice was no longer good law, but distinguishing it as from a factual basis. And this court also has decisions directly on point involving congressional candidates, just like in this case. And that is both Cartwright versus Barnes and Cofield versus Handel, which are squarely on point. And so there's no reason for the court to employ Berglund versus Cartwright and Cofield. I'm sorry, your honor. I think that, uh, Cartwright and Cofield are not clear in this regard, but I do not take them and they never say they are not applying an Anderson analysis. They do address the arguments that are on a rather thin evidentiary basis in both of those cases. And they say that the, uh, distinctions that plaintiffs there were trying to make, uh, were simply immaterial, uh, so that there was no difference from Janice. Uh, so I don't think either one of those cases holds that district court is not obliged to employ the Anderson analysis. And to the extent they so hold, they are not binding because they're contrary to our prior panel in Berglund, uh, which is of course, binding under the prior panel rule. And I'd like to address your reading of Anderson and whether or not the district court was obligated to follow that framework. First, I'll know that notice that Janice or Anderson was not a significant departure from Janice. If you looked at the way the court analyzed the claim in the Janice decision, it was a balancing test. The court first looked at the burdens that was placed on candidate and found that Georgia's petition requirements did not present a severe burden on candidates because there were very few restrictions on the signature collection process. And those, um, those same qualities about Georgia's signature collection requirements are, are still the same. Georgia's requirements have not materially changed. The court then looked at the state's interest and found that Georgia has a legitimate interest in requiring political body candidates to show a significant modicum of support among voters before putting their names on the ballot. And Anderson explicitly recognizes this holding in Janice, never in the Supreme court decision in Anderson, does it walk back it's holding in and the Supreme court and this court and circuit courts around the country have continued to recognize Janice as a setting and a permissible constitutional level for ballot access requirements. And I would also submit that even if the district court had applied the Anderson verdict standard in this case, it would not have reached a different result because the district court's analysis would still have to be informed by Janice and this court's precedent, um, both Janice and Anderson and the verdict decision. In those cases, the Supreme court said that Georgia's petition requirements were reasonable and non-discriminatory and therefore subject to the lowest level of scrutiny. And I know the appellants are making the argument that Georgia's petition requirements should be subjected to some higher level of scrutiny and even strict scrutiny, but this court has never analyzed ballot access cases and petition requirements at that level of scrutiny. And Coffield has explicitly stated that Georgia's petition requirements have not materially changed. Thank you. So we submit that even if the court had employed Anderson verdict on the summary judgment record before it, that the outcome would not have been different. And finally, I'd like to address Norman versus Reed and explain why that case is not controlling here. Um, Norman versus Reed in the earlier case in the socialist workers party versus Illinois, those two cases involved a very unique feature of Illinois petition requirements that are not present in Georgia. And those cases are very limited and merely hold that a state's petition requirements may not require more signatures for local office than it does for statewide office. Illinois had a very unique aspect in their law where they had a 25,000 signature requirement with a flat requirement for statewide office. It was also the same requirement for local office. And what Illinois law was requiring of candidates is that in the case of Norman versus Reed, a new party wanted to run a slate of candidates for county commission. And in order to do so, it was having to collect 25,000 signatures for each political subdivision because the law required that you had to meet the signature requirement for every single political subdivision within a district. So the court found that the law was actually requiring candidates for a local office to collect far more signatures than statewide. That is not present here in Georgia. Statewide candidates do not, or excuse me, local candidates, candidates for congressional districts do not have to collect more signatures than they would have to to meet the statewide petition requirement. And I see that my time is coming to a close. So unless the court has additional questions for me, we would ask that the court affirm the district court's grant of summary judgment in favor of the Secretary of State. All right. Thank you very much, Ms. McGowan. Mr. Self. Thank you, Judge Jordan. I think I want to try to make three quick points. First on the equal protection claim, my colleague on the other side says that it has never been recognized, but I respectfully disagree. Our claim is really on all fours with the claim identified and upheld by the court in Illinois versus Socialist, Illinois State Board of Elections versus Socialist Workers Party, which was then extended in Norman versus Reed. And so I think it really has been recognized before at the highest level. And we've said in our brief that we disagree with the Secretary on the facts, and I'll reemphasize that here. A libertarian candidate for one congressional seat has to gather approximately 25,000 signatures. A libertarian candidate for president has to under Norman versus Reed and Illinois versus the Socialist Workers Party case, that disparity has to be justified by a compelling state interest. My second point responds to one of your questions, Judge Jordan, to my colleague, and that is about whether our filing fee claim has been addressed. And I want to be clear that our claim is that the cumulative burdens of all of Georgia's ballot access scheme are what's at issue here. And the Supreme Court made clear in Williams versus Rhodes, 393 U.S. 23 at page 34, that ballot access regimes are to be assessed in their entirety, and not just on a piece by piece basis. And so our claim, yes, is different than Jenna's, but we are challenging the entirety of the scheme here. I want to be clear on that. And lastly, I want to say that the Secretary of State's approach to Jenna's advocating that some safe harbor of 5% turns the case on its head. The Supreme Court upheld an earlier version of Georgia's ballot access scheme because it did not operate to freeze the political status quo. And now the Secretary urges this challenge, despite its operation to freeze the status quo. That is a misreading of Jenna's that turns the 5% petition requirement into a bright line litmus test, which has been soundly rejected by the courts, both by the United States Supreme Court in Anderson and by this court in Berglund and Green Party. And for that reason, the court should vacate the district court's judgment. All right. Thank you very much. Thank you both. That concludes our oral arguments for the week, and the court is in recess. Thank you. Thank you.